**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Alan STARR, Defendant–
Appellant.**

**No. 91–10215.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1992.

Decided July 29, 1992.

---

**358**

Candace A. Fry, Sacramento, Cal., for defendant-appellant Robert Alan Starr.

Thomas E. Flynn, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee U.S.

Before: FLETCHER, POOLE, and BRUNETTI, Circuit Judges.

POOLE, Circuit Judge:

Defendant Robert Alan Starr was sentenced to eighty-seven months in federal prison under the Sentencing Guidelines upon conviction on three counts of bank robbery. Starr appeals his sentence, arguing that the district court (1) improperly relied upon an unadjudicated probation violation as a basis for upward departure; (2) failed to provide adequate notice that it would also base the upward departure on two prior convictions not considered in the calculation of his criminal history score; (3) failed to consider the similarity of these "remote" offenses to the bank robberies that are the subject of this case; and (4) departed to an unreasonable extent because the analogy the court drew between Starr's actual criminal record and Guidelines criminal history category IV was inac-

curate. We have jurisdiction pursuant to 18 U.S.C. § 3742, and we affirm.

I

Between January and March of 1988 defendant Robert Alan Starr committed ten bank robberies in California. He was indicted by a grand jury in the Eastern District of California for seven of the robberies on April 15, 1988. Shortly thereafter, Starr consented to the filing of an information charging him with the three others, which occurred in the Northern and Central Districts of California. On June 9, 1988, Starr pled guilty to the first three counts of the indictment and to all three counts in the information. The plea agreement obligated the government to dismiss the remaining four counts of the indictment and to abstain from prosecuting Starr for an additional six robberies committed in the Northern and Central Districts of California. The government also agreed not to recommend an upward departure at sentencing.

On September 11, 1988, the district court sentenced Starr under the law in effect prior to the effective date of the Sentencing Guidelines to three concurrent twenty-year prison terms. After the Supreme Court upheld the Sentencing Guidelines a few months later,[1] Starr asked the district court to resentence him under the Guidelines. The court granted Starr's motion and ordered an updated presentence report (PSR). The probation office calculated Starr's total adjusted combined offense level to be 23 and indicated that Starr should be assessed three criminal history points. This recommendation was based upon (1) a 1986 Florida conviction for possession of a controlled substance, for which Starr received a two-day jail term and one year of probation; and (2) a warrant for Starr's arrest for violation of probation, issued by Florida authorities and outstanding at the time Starr committed the California bank robberies. The three criminal history points resulted in a calculated criminal his-

tory category of II. The combination of Starr's total offense level of 23 and criminal history category II resulted in a sentencing range of 51–63 months.

The probation office recommended an upward departure to 113 months because it believed Starr's criminal history score did not accurately reflect the extent of Starr's prior illegal behavior. After we held shortly thereafter in *United States v. Castro-Cervantes*, 927 F.2d 1079 (9th Cir.1990), that counts dismissed under a plea bargain could not be used to justify an upward departure, the probation office prepared a supplement to the PSR recommending a smaller upward departure to 87 months. The basis for this recommended departure was (1) the unadjudicated Florida probation violation pending against Starr at the time of his first sentencing for the bank robberies; and (2) two pending California counts charging Starr with embezzlement and armed robbery. The probation office concluded that these factors rendered Starr's actual criminal history more like a defendant in criminal history category IV than one in category II.

The district court held a sentencing hearing on April 18, 1991. The court stated that it would not consider the armed robbery alleged to have been perpetrated by Starr and invited Starr's counsel to comment on the sentence Starr should receive. Counsel argued against an upward departure on the sole basis of the embezzlement charge and hypothesized that Starr's conviction on that charge would have resulted in two additional criminal history points and a Guideline range of 57–71 months when combined with the adjusted offense level of 23. Counsel urged the court to sentence Starr to a term of 63 months, which falls in the middle of that range and at the top of the range associated with criminal history category II. The government concurred in these recommendations.

The court sentenced Starr to 87 months in federal custody, imposed a subsequent three-year term of supervised release, and

---

1. On August 23, 1988, we declared the Guidelines unconstitutional. *See Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988), *over-* *ruled, Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

ordered restitution of $2,585 and a special assessment of $300. The court supported its sentencing decision with the following findings:

> The court finds that the criminal history category in this case ... does not adequately reflect the seriousness of the defendant's criminal conduct or the likelihood of commission of other crimes.
>
> His history of criminal conduct ... is more similar to defendants in a criminal history category four.
>
> [T]he preponderance of the evidence before this Court shows that he committed other crimes which have not been adjudicated which would likely result in at least two additional convictions, one of which would result in a sentence of more than 60 days confinement. The confinement range for defendants with an offense level of 23 ... and a criminal history category of four would be ... 70–87 months.
>
> ....
>
> [The court] bases this finding on two previous convictions not counted in computing the criminal history category, both of which are crimes of theft.
>
> In addition, the court is considering offenses listed in the [PSR] under pending charges. The court finds reliable evidence that the defendant violated probation[, as] alleged by authorities in Fort Pierce, Florida, and committed an embezzlement ... in Santa Cruz, California. It does not take into consideration ... the alleged armed robbery in Hawthorne, California, because it believes that the available evidence with respect to that is not sufficient to connect this defendant.

Starr filed his timely notice of appeal on April 25, 1991.

## II

Starr argues that the district court (1) improperly relied upon the unadjudicated Florida probation violation in departing upward since such reliance constituted forbidden "double counting"; (2) failed to consider the factual similarity of the bank robberies to the prior offenses used to justify upward departure; (3) failed to provide adequate notice of its intention to depart upward; and (4) departed to an unreasonable extent as a result of an erroneous analogy of his actual criminal history to a category IV defendant rather than a category III defendant.

### A. *Standard of Review*

█ In reviewing a sentencing court's decision to depart under the Guidelines, we employ a three-stage standard of review. First, we review *de novo* whether the sentencing court correctly relied upon aggravating factors not adequately taken into account by the Sentencing Guidelines. Second, we review for clear error any factual findings supporting the existence of any circumstance relied upon by the sentencing court to justify departure. Finally, we examine for an abuse of discretion the extent of the upward departure. *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir. 1991) (en banc).

### B. *Reliance upon the Florida Probation Violation*

█ One reason given by the sentencing court for its decision to depart was Starr's Florida probation violation. Starr argues that the outstanding warrant issued by Florida authorities for violation of probation was already considered when the sentencing court calculated his criminal history. *See* U.S.S.G. § 4A1.1(d) (authorizing addition of points if defendant committed offense at issue while on probation). We hold that no impermissible double-counting took place.

U.S.S.G. § 4A1.3(d) provides:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning ... whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.

A sentencing court may not base a decision to depart on a factor already taken into account by the Guidelines. *United States v. Faulkner*, 952 F.2d 1066, 1073 (9th Cir. 1991); *United States v. Nuno–Para*, 877 F.2d 1409, 1413–14 (9th Cir.1989).

The government argues that no double-counting occurred here because inclusion of Starr's probation status in the calculation of his criminal history score measures recidivism and does not require that the defendant have been in violation. We have not previously faced the government's argument under similar factual circumstances. However, our cases indicate that the general approach advocated by the United States is correct. For example, in *United States v. Schomburg*, 929 F.2d 505 (9th Cir.1991), the defendant was sentenced for failure to appear for sentencing after conviction on charges of establishing a drug manufacturing operation. The drug conviction was used to calculate the defendant's criminal history score. In addition, the defendant's offense level was enhanced because he failed to appear on a charge which upon conviction could result in imprisonment for more than fifteen years. The defendant argued that the conviction was counted twice: because it was part of the offense of failing to appear, it had already been used to determine the base offense level. We disagreed:

> [T]he offense level enhancement would have been appropriate even if appellant had been charged but not convicted of the manufacturing offense. The additional use of the offense to raise his criminal history score reflects the additional fact that he *was* convicted.

929 F.2d at 506 (emphasis in original). *See also United States v. Nelson*, 919 F.2d 1381 (9th Cir.1990) (similar holding). In *United States v. Wright*, 891 F.2d 209 (9th Cir.1989), we ruled that no double counting

occurred where the sentence of a defendant convicted of escape was enhanced because she had been in custody at the time of that offense. We reached this conclusion because a detainee could escape from custody not imposed as a result of a criminal sentence. *Id.* at 211.

■ The common thread of these cases is that multiple uses of a particular aspect of a defendant's past behavior are proper where each invocation of the particular behavior serves a unique purpose under the Guidelines. Applying that rule, we have no difficulty concluding that no impermissible double counting occurred in this case.[2] As the government explains, the district court's concern with Starr's probation violation was not that it indicated a risk of recidivism; it reflected a conclusion that Starr's conduct in perpetrating the bank robberies was more severe given that he had already committed the *additional offense* of violating his probation. *See Schomburg*, 929 F.2d at 506 ("The criminal history score ... reflects one's failure to learn from past mistakes.").

### C. *Failure to Examine Factual Similarity of Prior Offenses*

■ Starr next argues that the district court improperly considered his 1975 conviction for possession of stolen property and his 1976 conviction for embezzlement in its decision to depart upward. He asserts that these prior offenses are not in fact similar to the bank robberies at issue in this case and that the district court erred by not conducting a particularized inquiry into the facts of those prior cases. We reject this argument.

A sentencing court may base a departure decision on a defendant's previous sentences imposed before the "cutoff" date for

---

2. We therefore agree with the Eighth Circuit's resolution of this issue. *See United States v. Stephenson*, 924 F.2d 753 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 39 and — U.S. —, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991). In *Stephenson*, the court upheld the imposition of adjustments for both a prior sentence of probation and commission of the

charged offense while on probation because "the [ ] provisions involve[d] two distinct considerations." 924 F.2d at 759. While the prior sentence addressed "prior criminal conduct generally", the other adjustment addressed "the additional consideration of the recency of the prior criminal activity." *Id.* Thus, no double-counting occurred.

prior criminal conduct[3] if the prior sentences are "evidence of similar misconduct." U.S.S.G. § 4A1.2, Application Note 8; *see United States v. Notrangelo,* 909 F.2d 363, 367 (9th Cir.1990). The government has the burden of demonstrating that such similarity exists. Here, the government merely asserted that the bank robberies and the prior offenses were "crimes of theft."

This was a sufficient basis upon which to conclude that the bank robberies and the prior uncounted offenses were similar. Inquiry into the specific facts of the prior convictions is not necessary. *See United States v. Martinez,* 905 F.2d 251, 253 (9th Cir.1990). We have previously declared burglary and theft to be similar offenses, *Notrangelo,* 909 F.2d at 366, and have stated that malicious conversion and uttering counterfeit obligations may be similar to burglary and theft. *Id.* at 367. Moreover, the Sentencing Commission considers these offenses similar.[4] The Guidelines group larceny, embezzlement, possession of stolen property, burglary, and robbery in a single part. U.S.S.G. ch. 2, Part B. The district court's conclusion that Starr's prior offenses were similar to the bank robberies was not clearly erroneous.

### D. *Adequate Notice of Intention to Depart*

█ Starr argues that the district court did not provide adequate notice of its intention to depart upward based upon his two prior convictions for embezzlement and possession of stolen property. He rests his argument on the fact that the PSR allegedly did not refer to the prior convictions as a basis for its departure recommendation. Starr's argument is meritless.

█ The sentencing court must give the defendant reasonable notice of the specific grounds upon which departure is contemplated. *See Burns v. United States,* —— U.S. ——, ——, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991); *United States v. Ramirez-Jimenez,* 967 F.2d 1321, 1328 (9th Cir.1992); *United States v. Cota-Guerrero,* 907 F.2d 87, 90 (9th Cir.1990). Here, the specific factors justifying departure were identified by the PSR. The PSR listed the embezzlement and possession of stolen property charges and included a recommendation to depart on the basis of an inadequate criminal history score. The PSR also gave as a reason for departure Starr's general criminal record. The March 1991 supplement to the PSR explicitly relied upon the embezzlement and possession of stolen property charges to support the departure recommendation.

The reasons contemplated by the district court as a basis for departure were also made known to Starr by the court weeks before Starr's sentencing hearing. The court held a meeting with defense counsel and the prosecutor in chambers two weeks before the sentencing hearing. The purpose of that meeting was to discuss possible grounds for an upward departure. Contrary to Starr's assertion, at that meeting the district judge specifically pointed to the two prior convictions as a basis upon which he was considering departure. Starr does not dispute that the district judge also offered defense counsel an opportunity to comment and recommend an appropriate sentence at the sentencing hearing. Under these circumstances we are unable to find that Starr did not receive "reasonable notice" of the reasons for the court's contemplation of departure. *See Ramirez-Jimenez,* 967 F.2d at 1328.

### E. *The Extent of the Departure*

█ Starr's final argument is that the district court improperly analogized his actual criminal history to a criminal history

---

**3.** U.S.S.G. § 4A1.2(e)(2) forbids inclusion in the criminal history score of any offense for which sentence was imposed more than ten years before commission of the instant offenses.

**4.** Starr cannot complain that the district court incorrectly relied on the information contained in the PSR because he never objected to any of the information in the PSR. *See, e.g., United States v. Monroe,* 943 F.2d 1007, 1018 n. 12 (9th Cir.1991) (declining to hear challenge to factfinding unless raised at time of sentencing), *cert. denied,* —— U.S. ——, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992); *United States v. Smith,* 905 F.2d 1296, 1302 (9th Cir.1990) (same).

category IV defendant instead of a category III defendant. We reject this argument because Starr overlooks some of the factors considered by the district court.

■ A decision to depart upward must be guided by analogy to the criminal history category that most closely resembles the defendant's actual criminal record. U.S.S.G. § 4A1.3 (and associated policy statement). Ordinarily, the court should determine whether a defendant's actual criminal history most closely resembles the next higher criminal history category before concluding that the defendant's record is so severe that comparison to a higher category is warranted. *United States v. Richison*, 901 F.2d 778, 781 (9th Cir.1990) (per curiam).

Starr asserts that the pending California embezzlement charge—one of the justifications for departure—could in theory justify an addition of a maximum of two points to his criminal history score. See U.S.S.G. § 4A1.1(b). Starr's theory is that the one- or two-point addition for the embezzlement charge should be added to *either:*

(1) the (maximum) two points that would have been assessed had Starr been convicted on the probation violation charge and a sixty-day (or longer) jail term imposed *and* the two points assessed for his commission of the bank robberies while on probation;

*or*

(2) the two points for the robbery while Starr was on probation and the one point that would have been assessed for his probation violation conviction and the resulting sixty day or shorter prison term.

Starr accordingly hypothesizes that he should have been assessed five criminal history points [5] and that his "actual" criminal history score places him at the middle to top range of category III. The result of these arithmetical gymnastics is that Starr should have received a maximum sentence of 71 months.

The problem with Starr's argument is that it overlooks the two remote convictions also not counted in his criminal history score. Had those two convictions—dating from 1975 and 1976—been counted, the point total would have been seven or eight, because the two remote convictions together would be worth two points. Starr's "actual" criminal history category would thus be category IV.[6] Because the district court considered both the prior, remote convictions and the pending charges, it compared Starr's actual criminal record to a defendant with a guideline criminal history point total sufficient to place the defendant in category IV. The court thus implicitly found that analogy to a defendant in criminal history category III was inaccurate because Starr's criminal history was "so egregious that further departure [was] warranted." *Richison*, 901 F.2d at 781. This procedure was correct, and the extent of the upward departure was therefore not unreasonable.[7]

### III

Starr's sentence is AFFIRMED.

---

**5.** Of course, Starr could have been sentenced to sixty days or longer on both the embezzlement and probation violation charges had he been convicted of both, and that would mean that four points would have been added to the two points for committing the robberies while on probation. Thus, Starr's "actual" criminal history point total could have also been six.

**6.** Starr's argument that the district court relied only on the likelihood of conviction on the embezzlement and probation violation charges, and not the 1975 and 1976 convictions, is refuted by the record. The district court specifically based its decision to depart upward on the two

prior offenses not counted in the computation of his criminal history score.

**7.** *Richison* does not require an explicit statement of the reasons why a defendant is compared to a hypothetical defendant in a particular criminal history category. Rather, we must only be able to ascertain "what it is about [the defendant's] criminal record that makes him suitable for placement in one category rather than another." 901 F.2d at 781. In this case the district court supported its sentencing decision with specific findings that quite clearly delineate the reasons for the comparison it made.