993 F.2d 885
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Paul FLINT, Defendant-Appellant.
 No. 92-50554.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1993.
Decided May 19, 1993.
 
 Before: NOONAN and TROTT, Circuit Judges, and FITZGERALD*, District Judge.
 MEMORANDUM**
 Robert Paul Flint appeals his conviction and sentence for subornation of perjury in violation of 18 U.S.C. § 1622, and for aiding and abetting a false, fictitious and fraudulent claim in violation of 18 U.S.C. §§ 287 and 2. We affirm.
 FACTS
 Flint owned a sports memorabilia store called the Sports Stop. The store sold items such as baseball cards, souvenir programs, and autographed photos of famous baseball players and other sports celebrities. Flint also sold items on consignment from third parties.
 In July of 1990 the DEA seized the assets, including the inventory, of the Sports Stop. Eventually the government filed a civil action to forfeit the assets of the Sports Stop. After the suit was filed third parties became eligible to contest the forfeiture. Most of these innocent owners had left property on consignment with the Sports Stop. Each claimant could notify the government of his or her claim by filing a formal notice with the court, or by sending a letter to the DEA in care of the United States Attorney's office. The parties to the forfeiture agreed to hold a hearing on May 29, 1991 before a United States magistrate judge to catalogue each person's claim.
 Before the hearing, Flint approached Lena Pellegrino, who had a valid claim to some items she left at the store on consignment, and asked her to file a claim for a valuable set of lithographs that Flint owned himself. She refused. Flint then asked Gordon Miller to include in his rightful claim a set of baseball cards that Flint owned. Miller refused as well.
 Finally, Flint approached his girlfriend and business partner in another memorabilia shop, Sylvia Brister, and asked her to include with her rightful claim two boxes of baseball cards that Flint owned. He told her that he planned to sell the cards and invest the proceeds in their new store. She agreed.
 Brister wrote a letter claiming ownership of the cards and gave it to Flint. Flint instructed Brister to include with this letter a cancelled check, made out to Lena Pellegrino, as verification of the false claim. This check was written in payment for several unrelated items that Brister bought at an auction. Flint sent the letter to his lawyer. He also instructed Brister to attend the hearing.
 Both Brister and Flint were present at the May 29 hearing. All claimants were placed under oath. After hearing from all known claimants, the magistrate asked all those who did not post a letter to the U.S. Attorney or who did not file a formal notice with the court to step forward and state their claims. At that moment, Flint turned around and nodded to Brister, indicating that she should stand up and approach the podium. He did not say anything to her. She walked up to the podium, swore the oath and made her legitimate and illegitimate claims.
 Sometime after the hearing, Flint was helping the DEA inventory the items seized from the Sports Stop when he tried to pass some of his valuable autographed photos off as Miller's. Miller discovered what Flint had done and informed the DEA.
 Several months later Brister met with the U.S. Attorney to discuss her claim. At that time she admitted that she did not own the two boxes of cards, and that Flint had induced her to make the claim.
 PROCEEDINGS
 In April, 1992 a grand jury returned a five-count second superseding indictment charging Flint with retaliating against a federal witness (count one), subornation of perjury (count two), aiding and abetting a false, fictitious and fraudulent claim (count three), and two counts of obstruction of justice (counts four and five). Flint and the government agreed to proceed to trial on count two (subornation of perjury) and count three (aiding and abetting a false, fictitious and fraudulent claim). After a three-day trial the jury found Flint guilty of both counts. The district court sentenced Flint to 30 months imprisonment on count three and 27 months imprisonment on count two, to be served concurrently.
 ANALYSIS
 I. Sufficiency of the Evidence
 Flint challenges the sufficiency of the evidence to support his convictions. The evidence is sufficient to support the convictions if, viewing the evidence in the light most favorable to the government, any rational jury could have found the essential elements of the crimes beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 A. Subornation of Perjury
 Flint argues that the evidence was not sufficient to support the subornation of perjury conviction because (1) he did not know until the hearing began that Brister would be placed under oath, and (2) the government's entire case relied upon the nod of his head, which Flint argues is as indicative of innocence as of guilt. Flint's first point is irrelevant, because there was plenty of evidence from which a rational jury could conclude that Flint intended Brister to lie while under oath.
 Flint argues that his gesture to Brister at the hearing could be interpreted in two ways, one showing a guilty mind and the other innocence: either he was encouraging her to go ahead with their plan to make a legitimate and illegitimate claim, or he was indicating to her that it was her turn to make her legitimate claim. When he nodded to her at the hearing, Flint contends, he had no idea that she would perjure herself; he thought that she would just claim her own property.
 Even if one were to grant Flint the proposition that his nod is as indicative of guilt as of innocence, we may not reverse if the evidence allows the reasonable inference that the nod indicates his guilt: "We respect ... the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United States v. Boise, 916 F.2d 497, 499 (9th Cir.1990), cert. denied, 111 S.Ct. 2057 (1991) (citing United States v. Goode, 814 F.2d 1353, 1355 (9th Cir.1987)). Plenty of evidence supports the reasonable inference that by his nod Flint encouraged Brister to commit perjury.
 Flint pressured Brister to attend the hearing so she could make her false claim. By the time Flint nodded to Brister everyone at the hearing knew that she would be sworn in. After the hearing Brister told Flint that she was concerned about lying in court, but he said, "It's no big deal. Don't worry about it." The jury also knew that Flint tried to persuade both Pellegrino and Miller to make false claims. In addition, Brister testified that Flint had a bad temper and often bullied her. The jury could reasonably infer from Flint's careful planning of the fraud, from his cavalier attitude about telling the truth in the context of the forfeiture proceeding and from his relationship with Brister that Flint wanted her to lie under oath when he gestured to her at the hearing.
 B. Aiding and Abetting a False, Fictitious and Fraudulent Claim
 The district court instructed the jury that in order to find Flint guilty of aiding and abetting a false, fictitious and fraudulent claim they must find that,
 One: [ ] the defendant made or presented or caused a claim to be made or presented; two: [ ] the claim was presented to a government agency as detailed in the indictment; three: [ ] the claim was false, fictitious or fraudulent; and four: [ ] the defendant knew that the claim was false, fictitious or fraudulent.
 Flint says that the government did not prove that he presented the claim to a government agency. He is mistaken.
 Flint argues that Brister made her claim to a court, and that the proceeding in which Brister perjured herself was an adjudicative hearing; thus the government may not prosecute him under 18 U.S.C. § 287 due to the adjudicative function exception of 18 U.S.C. § 1001, a statute closely related to 18 U.S.C. § 287. See United States v. Mayer, 775 F.2d 1387 (9th Cir.1985). We need not decide whether the exception applies to prosecutions brought under 18 U.S.C. § 287 because the jury could reasonably conclude from the evidence that Brister made her claim directly to the DEA.
 The evidence establishes that Brister, like many other innocent owners, made an informal claim for seized property. At the point in the forfeiture proceeding when Brister committed perjury, the DEA had almost unfettered discretion to deal with informal claims. The Assistant United States Attorney in charge of the forfeiture testified about the DEA's procedures: "we reviewed their claim[s] and determined whether or not [they were] valid; and, when it was, because we were the moving party ... we were in a position to do everything we could to accommodate them."
 The May 29 hearing was part of the process in which the DEA exercised its discretion to accommodate informal claimants. The hearing's purpose was to catalogue the various claims to the Sports Stop property. The jury could therefore conclude that Brister made her claim directly to the DEA.
 II. The Sentence
 We review the legality of the sentence de novo and the factual findings of the district court for clear error, and we give due deference to the sentencing court's application of the guidelines to the facts. United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992) (en banc).
 A. Amount of Loss
 The district judge added three points to Flint's base offense level for aiding and abetting a false, fictitious or fraudulent claim because he determined that the intended loss to the government was between $10,000 and $20,000 dollars. U.S.S.G. § 2F1.1(b)(1)(D). In his sentencing memorandum and at the sentencing hearing Flint challenged the factual basis for this calculation. We find no clear error.
 The court included in its value calculation the photographs owned by Flint that he tried to pass off as Gordon Millers. The court properly considered the intended loss from this attempted swindle. See U.S.S.G. § 1B1.3(a)(2). The photographs were reliably valued at $2,525. A dispute exists as to the valuation of the cards, which, added to $2,525, the court found to amount to at least $10,000. If the cards were worth at least $7,500, the court was not in error.
 Flint argues that the court should have found that the cards that he asked Brister to claim were worth $1,800 because that was the amount of her claim. This number is inherently unreliable, however, because Brister's claim was false.
 The boxes of cards that Flint asked Brister to claim were never found, so valuing them is difficult. However, under § 2F1.1 of the Guidelines the amount of loss need not be determined with precision: "The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1 comment (n. 8). The trial testimony indicates that Flint intended to create these boxes out of the Sports Stop inventory as he helped the DEA organize the seized property. Brister testified that Flint wanted to raise money from the sale of the cards "so he could put some money in my store, so my store would do well with it." Brister also testified that Flint intended to put Nolan Ryan rookie cards, which can be worth up to $2,000, and other valuable cards in the boxes. It is undisputed that Flint could have created boxes of cards worth at least $7,500 out of the Sports Stop inventory. It is reasonable to infer that he intended to take at least this much. Given these facts, we cannot say that the district court's valuation of the intended loss was clearly erroneous.
 B. Obstruction of Justice
 Flint argues that the court should not have added two points for obstruction of justice to the base offense level for aiding and abetting a false, fictitious and fraudulent claim because the obstruction was already counted in the offense level for subornation of perjury. In most cases, the two-point adjustment for obstruction of justice may not be applied to the offense level for subornation of perjury. However, application note 6 to U.S.S.G. § 3C1.1 says,
 
 
 1
 Where the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely-Related Counts). The offense level for that group of closely-related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.
 
 
 2
 Because the two points for obstruction of justice was added to the offense level for the underlying offense, here aiding and abetting a false, fictitious and fraudulent claim, the upward adjustment was not made in error.
 
 C. More Than Minimal Planning
 
 3
 Flint challenges the two-point enhancement of his offense level for more than minimal planning on two grounds: (1) the facts do not support the application of U.S.S.G. § 2F1.1(b)(2)(A); and (2) the application of both § 2F1.1(b)(2)(A) for more than minimal planning and § 3B1.1(c) for his role as the organizer or leader constitutes impermissible double-counting.
 
 
 4
 The facts undoubtedly support the conclusion that Flint's crime involved more than minimal planning. He recruited people with legitimate claims to make false ones, and he contrived a scheme to make Brister's claim for the boxes of cards appear legitimate. Although Flint is certainly no master criminal, his crime did require complicated planning.
 
 
 5
 The application of both § 2F1.1(b)(2)(A) and § 3B1.1(c) does not constitute double-counting. The cases establish that the same conduct may support the application of two enhancements when "each stem from different concerns." United States v. Christiansen, 958 F.2d 285, 288 (9th Cir.1992); see also, United States v. Skillman, 922 F.2d 1370, 1377-78 (9th Cir.1990), cert. dismissed, 112 S.Ct. 353 (1991). The enhancement for Flint's role as a leader addresses concerns about organized criminal activity and reflects the moral conclusion that a leader is more culpable than his or her followers. The more than minimal planning adjustment stems from concerns about repeated, complex criminal acts. The court could apply both § 2F1.1(b)(2)(A) and § 3B1.1(c) to Flint's offense level.
 
 D. Acceptance of Responsibility
 
 6
 Flint argues that the district court erred when it denied Flint a two-point reduction for acceptance of responsibility. "Whether a defendant has accepted responsibility for a crime is a question of fact which this court reviews for clear error. The district court's determination will not be disturbed unless it is without foundation." United States v. Aichele, 941 F.2d 761, 767 (9th Cir.1991) (quoting United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990)) (internal quotations omitted). The district court accepted the probation department's recommendation that Flint did not deserve a two-point reduction. Flint shifted the blame to Brister; he minimized the seriousness of the offense; and he did not show any remorse for his actions. These facts provide the foundation that supports the district court's decision to deny the reduction.
 
 E. Role in the Offense
 
 7
 Flint argues that the district court improperly awarded a two-point upward adjustment for his leadership role in the offense. Flint did not raise this objection in the trial court. Consequently, he may not raise it on appeal. United States v. Belden, 957 F.2d 671, 674-75 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992).
 
 F. Criminal History Score
 
 8
 When computing Flint's criminal history score, the court assessed two points for a four-month sentence Flint received for violating probation under U.S.S.G. § 4A1.1(b). The court also assessed two points because he committed the instant offense while on probation. U.S.S.G. § 4A1.1(d). Flint argues that, because the probation revocation was based upon his conviction for the instant offense, adding two points under § 4A1.1(b) and (d) constitutes double-counting.
 
 
 9
 We already addressed this question in a similar context. See United States v. Starr, 971 F.2d 357 (9th Cir.1992). In Starr, the district court added two points to the defendant's criminal history score because he committed the offense while on probation, but he had not yet been found in violation of his probation. The court therefore departed upward under U.S.S.G. § 4A1.3(d) because "the criminal history category ... does not adequately reflect the seriousness of the defendant's criminal conduct or the likelihood of commission of other crimes.... [T]he preponderance of the evidence ... shows that he committed other crimes which have not been adjudicated." Id. at 360. The court in Starr based its departure upon § 4A1.1(b), adding two points to the defendant's criminal history score because it believed that his probation violation, when adjudicated, would result in a sentence of more than 60 days imprisonment. On appeal the defendant claimed that the court counted his probation twice when it added two points under § 4A1.1(d) and departed upward based upon § 4A1.1(b).
 
 
 10
 The Starr court rejected the defendant's argument, reasoning that "the multiple uses of a particular aspect of a defendant's past behavior are proper when each invocation of the particular behavior serves a unique purpose under the Guidelines." Id. at 361. In Flint's case, the two points added for committing the crimes while on probation reflect the threat of recidivism, while the two points added for violating probation reflect the fact that Flint committed an additional crime. See id. The two points added to Flint's criminal history score under § 4A1.1(b) did not constitute double-counting.
 
 
 11
 Flint's conviction and sentence are AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, United States District Judge, for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3