**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Samuel William DONAGHE,
Defendant–Appellant.**

No. 93–30058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1993.

Decided Sept. 30, 1994.

Sheryl Gordon McCloud, Seattle, WA, for defendant-appellant.

Sean Connelly, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the district court based its upward departure from the Sentencing Guidelines on proper factors and explained adequately the extent of its departure.

**I**

On November 21, 1988, Samuel Donaghe was sentenced for making a false statement in a passport application in violation of 18 U.S.C. § 1542. The district court did not apply the Sentencing Guidelines, because it was unclear at that time whether they were constitutional, and sentenced him to three years of probation. Because Donaghe had a history of sexually assaulting minors—he had been convicted of four such offenses previously—the court imposed the condition, among others, that Donaghe not associate with minors without the consent of the Probation Office.

On March 8, 1990, the district court revoked Donaghe's probation pursuant to 18 U.S.C. § 3563 because he had violated conditions of probation. Specifically, Donaghe had possessed a firearm, failed to inform the Probation Office of his new employment, associated with a minor foreign exchange student for whom he was the host parent, and been convicted in state court of solicitation to

commit assault and two counts of rape. The district court then sentenced Donaghe to five years imprisonment for the passport offense, again under pre-Guidelines law.

On appeal, this court vacated the sentence and held that the Guidelines applied. We remanded for resentencing, specifying that the district court consider *United States v. White,* 925 F.2d 284 (9th Cir.1991). *United States v. Donaghe,* No. 92–30183, 978 F.2d 716 (Table), 1992 WL 317200, 1992 U.S.App. LEXIS 29342 (9th Cir. Sept. 15, 1992). At resentencing on January 22, 1993, the district court adopted the Presentence Report ("PSR") that calculated Donaghe's criminal history category as 1, his total offense level as 4, and the resulting sentencing range as 0–6 months. The court also adopted the PSR's recommendation to depart upward and imposed a sentence of five years imprisonment and three years supervised release.

## II

When we remanded this case for resentencing under the Guidelines, we explicitly instructed the district court not to depart from the Guidelines based on Donaghe's conduct during probation. Instead, we stated that "[i]f the district court chooses to depart it must cite factors, available to it at the original sentencing, sufficient to support its decision. It may consider Donaghe's probation-violating conduct for its effect on the weighing of those departure factors." *Donaghe,* 1992 WL 317200, at *1, LEXIS 29342, at *3.

We relied on *White* to reach this conclusion. In that case, this court held that for resentencing under 18 U.S.C. § 3565,[1] the district court could not use probation conduct to "directly increase a sentence." *White,* 925 F.2d at 286. The court stated that the district court could depart from the Guidelines range, "provided that facts warranting departure were available at the initial sentencing." *Id.* at 287. However, the court also

noted that "probation-violating conduct is not completely irrelevant to sentencing under § 3565(b)[2].... [T]he sentencing court can consider the conduct in determining whether to depart from the initial guideline range.... In other words, the court cannot make additional factual findings to justify a departure, but can reconsider its original decision not to depart in light of the defendant's subsequent actions." *Id.*

The Guidelines provide two means of departing upward from a sentence range: adjusting the criminal history category when the Guidelines do not adequately reflect the seriousness of the offender's past conduct or the likelihood that he or she will commit other crimes, under U.S.S.G. § 4A1.3, p.s., and adjusting the offense level to take into consideration aggravating circumstances to a kind or a degree not considered by the Guidelines, according to U.S.S.G. § 5K2.0, p.s.

In evaluating these adjustments, the reviewing court does "not search the record for permissible reasons for departure; instead, [it] analyze[s] the reasons actually given by the district court." *United States v. Montenegro–Rojo,* 908 F.2d 425, 428 (9th Cir. 1990). Here, the district court, for the most part, relied on the PSR to articulate the reasons for departure. The PSR listed three factors that "were known to the Court at the time of the original sentence and would have justified an upward departure." First, Donaghe had been convicted between 1967 and 1973 of several sex-related crimes involving minors. Second, at the time of the original sentencing, he was being investigated for sexual misconduct with his nephew. Finally, a 1968 psychiatric evaluation diagnosed Donaghe as having a "sexual deviation, homosexuality with pedophilia." For the upward departure to be valid, all these factors must be proper bases for departure. *Id.* (If the district court "considered both proper and improper bases for departure, 'we have no way to determine whether any portion of the

---

1. This statute provides that on resentencing after probation revocation, the district court must impose "any other sentence that was available ... at the time of the initial sentencing." 18 U.S.C. §§ 3565(a) and 3565(b).

2. Although the facts in *White* involved probation revocation under § 3565(b), the court explained that § 3565(a) used the same language, and so the case's analysis applied to both sections. *Id.* at 286 n. 1.

sentence was based upon consideration of the improper factors,' and must therefore vacate the sentence and remand for resentencing") (citation omitted).

### A

As a basis for its departure, the district court relied on its determination that Donaghe's criminal history category inadequately reflected his past criminal conduct. The Guidelines do not allow past sentences of imprisonment exceeding one year and one month and occurring more than fifteen years before the sentencing date to be considered in determining a criminal history category. U.S.S.G. § 4A1.2(e)(1), (3). The Guidelines do not allow any other past sentences occurring more than ten years before the sentencing date to be considered in determining a criminal history category. U.S.S.G. § 4A1.2(d)(2), (3). Donaghe's misconduct occurred fifteen years prior to the initial sentencing.

However, the commentary to section 4A1.2 creates an exception for sentences imposed outside these time periods where the court finds "evidence of similar, or serious dissimilar, criminal conduct." U.S.S.G. § 4A1.2, comment. (n. 8). If the misconduct meets this description, "the court may consider this information in determining whether an upward departure is warranted." *Id.*

### 1

■ Donaghe argues that his convictions for child molestation are not similar to the instant offense of falsifying a passport application. The government has the burden of demonstrating that such similarity exists. *United States v. Starr*, 971 F.2d 357, 362 (9th Cir.1992). The government argues that the crimes are similar because Donaghe was motivated to falsify the passport application in order to escape an investigation into new child molestation charges. Thus, the government maintains, the crimes were "inextricably linked."

■ The government's argument must fail. Although there may be a causal link between Donaghe's tendency toward sexually abusing children and the false application—

because of his criminal behavior, he was in trouble and wanted to flee the country—this does not make the two crimes similar. The government's reasoning does not comport with this court's understanding of similarity, which requires a much closer likeness. For instance, in *Starr*, we held that possession of stolen property and embezzlement were similar to bank robbery, because all were "crimes of theft." 971 F.2d at 362. We did not require "[i]nquiry into the specific facts of the prior convictions." *Id.* And, in *United States v. Cota–Guerrero*, 907 F.2d 87 (9th Cir.1990), we concluded that past convictions for assault with a deadly weapon and assault and battery were similar to possession of a firearm by a felon because "they show a propensity toward violence and a willingness to use force." *Id.* at 89. As in *Starr*, we did not examine the particular facts surrounding each crime but instead concentrated on their general characteristics.

Child molestation and passport fraud have no characteristics in common. Unlike the crimes in *Starr* and *Cota–Guerrero*, they cannot be categorized together as crimes of fraud or of violence. They are linked only by the specific circumstances of this case, a factor not viewed as relevant. The crimes, thus, are not similar under the section 4A1.2 commentary.

### 2

■ The commentary to section 4A1.2 also creates an exception for *serious dissimilar past crimes*. Donaghe argues that this part of the commentary is not applicable to his case because it was introduced by amendment effective November 1, 1992 and his original sentencing occurred on November 21, 1988. We agree.

The amendment to the commentary of section 4A1.2 has been designated a clarifying change. U.S.S.G.App. C n. 472. Normally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively. U.S.S.G. § 1B1.11(b)(2). However, it will not be applied retroactively when, as here, it would violate the ex post facto clause. *United States v. Smallwood*, 35 F.3d 414, 417–18, n. 8 (9th Cir.1994). Thus, the 1992

amendment to the commentary to section 4A1.2 does not apply.

### 3

Section 4A1.3 also allows a court to depart because the criminal history category does not adequately reflect the likelihood that the offender will commit other crimes. The PSR improperly included Donaghe's 1968 diagnosis as a homosexual deviant as a factor for departure. Homosexuality is no longer categorized as a psychiatric disorder. Diagnostic and Statistical Manual of Mental Disorders (1987) (DSM–III–R). Further, the fact that someone is a homosexual is not indicative of his or her propensity to commit crimes. *See Beam v. Paskett,* 3 F.3d 1301, 1310 (9th Cir.1993) ("It goes without saying that society has abandoned its earlier belief that homosexuality presents a danger to the community."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994).

■ Although the PSR's notation that Donaghe was also diagnosed as an untreatable pedophile might be a reason for believing that he will commit other crimes, the court did not make factual findings supporting the existence of this factor, *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir. 1991) (en banc), other than to mention the outdated psychiatric report. Since it is not at all clear from the PSR that the twenty-five year old psychiatric evaluation is still valid or that a pedophile is likely to continue to molest children, the court's limited factual findings do not support the diagnosis as a basis for departure.

■ The district court also identified a January 1992 psychological evaluation, which concluded that Donaghe may continue his criminal behavior. Since this evaluation was not available as a factor at the initial sentencing, it cannot be a departure factor.

### B

The district court also based its departure on its determination that Donaghe's offense level was inadequate. Section 5K2.0 provides for adjusting an offense level if the offense involves "factors in addition to those identified that have not been given adequate consideration by the Commission," or "if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0, p.s. The pending criminal investigation of Donaghe for possible sexual misconduct with his nephew was a fact available at the initial sentencing and was a departure factor listed in the PSR. The government argues that the incident of passport fraud was atypical, because Donaghe's motive was to escape possible prosecution for sexual misconduct. The government contends that this justifies an upward departure in the offense level.

■ There is no mention in the Guidelines that the Sentencing Commission considered the reasons why a person might want to obtain a false passport. However, the version of section 5K2.0 in effect in November 1988 stated that "[h]arms identified as a possible basis for departure from the guidelines should be taken into account only when they are relevant to the offense of conviction." U.S.S.G.App. C n. 358. Intending to use the false passport for the purpose of escaping criminal prosecution is not an element of the crime of making a false statement in a passport application. *See* 18 U.S.C. § 1542. Since Donaghe's reason for wanting a fake passport is not relevant to the offense of falsifying the application, that reason could not be a basis for increasing the offense level in 1988. *See, e.g., United States v. Cervantes Lucatero,* 889 F.2d 916, 917 & n. 1 (9th Cir.1989) (holding upward departure inappropriate where it was based on district court's determination that offender's reason for entering United States illegally was not to seek work and help his family but to "live off the land" and "violate its laws").

■ The district court also identified as a factor supporting an increase in offense level the fact that "Judge Ingram in the original sentence imposed a special condition that he not be around minor children.... And the conduct for which Donaghe stands having committed on the revocation are all directly related to that conduct in the original sentence." The fact that Donaghe violated this probation condition was not available at the

initial sentencing and so cannot be a departure factor.

## C

Because all of the factors considered by the district court were improper bases for departure, we must vacate the sentence and remand for resentencing. *Montenegro–Rojo*, 908 F.2d at 428. At resentencing, the district court must not base its departure on Donaghe's diagnosis as a homosexual, the similarity between passport fraud and sexual misconduct, Donaghe's prior molestation convictions or any of Donaghe's conduct during probation.

## III

Donaghe argues that the departure from a sentencing range of 0 to 6 months to a sentence of 60 months was unreasonable. A district court abuses its discretion in departing upward if it "gave no reason or justification for the extent of its departure." *United States v. Beck*, 992 F.2d 1008, 1009 (9th Cir.1993). The district court must make an "effort to tie the departure to the Guidelines," through a "reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines." *United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1329 (9th Cir.1992) (quoting *Lira–Barraza*, 941 F.2d at 745). This is generally accomplished, in a case of inadequate criminal history, by "analog[izing] to higher criminal history categories." *Beck*, 992 F.2d at 1109. "Ordinarily, the court should determine whether a defendant's actual criminal history most closely resembles the next higher criminal history category before concluding that the defendant's record is so severe that comparison to a higher category is warranted." *Starr*, 971 F.2d at 363.

The district court here made no attempt to explain the extent of the departure when it adopted the recommendations of the PSR. The PSR calculated the new offense level of 24 (resulting in a sentencing range of 51 to 63 months) by adding to Donaghe's original level four offense a ten level increase for the two rape convictions, a five level increase for the solicitation to commit assault conviction, a three level increase for possession of a firearm, and a two level increase for his attempted solicitation of assault. These numbers appear to have been chosen at random; the report does not explain any rationale behind them. Neither does the report attempt to analogize Donaghe's supposedly unusual offense or inadequate criminal history to the next highest level or category.

Finally, the PSR conflates departures in offense level and in criminal history category. As explained above, some of the departure factors identified in the PSR are the type that might support an increased criminal history category, while others are the kind that might support a higher offense level. But the report increases only Donaghe's offense level and does not explain upon which of the factors it relies. It cannot rely on all the factors because some, like the prior convictions, could possibly support only a higher criminal history category.

We vacate the sentence and remand because the district court abused its discretion by not adequately explaining the extent of the departure. At resentencing, the district court must explain the extent of its departure by analogizing the increased criminal history category or offense level to the next relevant category or offense level.[3]

## IV

Donaghe argues that the district court improperly ordered his sentence to run consecutively with his state law sentences for

---

3. Donaghe argues that on remand the Revocation Table of U.S.S.G. § 7B1.4 should control resentencing. This table establishes sentencing ranges by taking account of criminal history categories and probation-violating conduct. However, in *United States v. Dixon*, 952 F.2d 260 (9th Cir.1991), the Ninth Circuit held that this section contradicted 18 U.S.C. § 3565(a). Section 3565(a) requires the court to impose a sentence

that was "available ... at the time of the initial sentencing," while the Revocation Table "require[s] courts to impose sentences that, in many cases, were not 'available' at the time of initial sentencing." *Id.* at 261. To the extent that the Guidelines conflicted with the statute, the court found them invalid. *Id.* at 260. Therefore, the district court should not be guided by the Revocation Table at resentencing.

the probation-violating crimes. He points to the current language of section 5G1.3(b), providing for concurrent sentences. However, since we apply the Guidelines effective on the date of sentencing, *United States v. Warren,* 980 F.2d 1300, 1304 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 397, 126 L.Ed.2d 344 (1993), we must apply the version of section 5G1.3(b) in force in November 1988.

■ The version of section 5G1.3 effective in November 1988 stated, "[i]f at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences." U.S.S.C.App. C n. 289. Donaghe was serving a state sentence when the district court ordered consecutive sentences. Thus, applying the 1988 version to Donaghe's situation, the district court's imposition of consecutive sentences was appropriate.[4]

### V

■ Donaghe argues that the district court cannot impose a period of supervised release on resentencing after probation revocation. His claim is not persuasive because the authorities he cites address resentencing after the revocation of supervised release. *See* 18 U.S.C. § 3583; *United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990).

However, the controlling statute for resentencing after probation revocation is 18 U.S.C. § 3565. The court in *Behnezhad* emphasized the difference between sections 3583 and 3565. After concluding that section 3583 did not allow a new term of supervised release, the court explained that section 3565 allowed for "greater flexibility to create terms of punishment for violations of probation." 907 F.2d at 899. "[W]hen a court revokes probation, it has the flexibility to structure a new sentence that may include probation, incarceration, fines and supervised release." *Id.* Therefore, the court did not err in imposing a three year term of supervised release.

### VI

Donaghe requests that the panel remand the case to a new judge. In *United States v. Arnett,* 628 F.2d 1162 (9th Cir.1979), the court stated that the relevant factors for making this decision are "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Id.* at 1165 (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (en banc)).

■ The Ninth Circuit has remanded under the first factor when the error was created by the judge. *United States v. Larios,* 640 F.2d 938, 943–44 (9th Cir.1981); *United States v. Doe,* 655 F.2d 920, 928–29 (9th Cir.1980). Here, Judge Tanner erred in identifying factors supporting departure that were not available at the initial sentencing. Also, he adopted the PSR's sentence recommendation, which relied on Donaghe's probation-violating conduct to justify an extreme upward departure, without explaining what "new light [the conduct] sheds on where to sentence within the original Guidelines range or whether or how much to depart." *Donaghe,* 1992 WL 317200, at *1, 1992 U.S.App. LEXIS 29342, at *3.

Although Judge Tanner created the error, there is no significant showing that he was biased against Donaghe. Reassignment to a new judge is not necessary to preserve the appearance of justice.

### VII

Because all of the departure factors identified by the district court were improper, we vacate the sentence and remand. Also, the district court's failure to explain the extent of the departure requires us to remand. How-

---

4. The government argues that U.S.S.G. § 7B1.3(f), p.s. governs this question. However,

in November 1988, that section did not exist.

ever, the imposition of three years supervised release and consecutive sentences was proper.

AFFIRMED in part, REVERSED in part, VACATED and REMANDED.