**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gene CAMP, Victor Camp, Todd Oatman, Defendants–Appellants.**

Nos. 94–30292, 94–30303 and 94–30304.

United States Court of Appeals, Ninth Circuit.

Submitted * June 6, 1995.

Decided Dec. 22, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument.  Fed.R.App.P. 34(a);  Ninth Circuit Rule 34–4.  The parties agree.

Michael Donahoe, Assistant Federal Public Defender, Helena, Montana; Gregory A. Jackson, Jackson & Rice, Helena, Montana; Wendy Holton, Helena, Montana, for defendants-appellants.

Kris A. McLean, Assistant United States Attorney, Helena, Montana; Nina Goodman, United States Department of Justice, Washington, DC, for plaintiff-appellee.

Before: BROWNING, WRIGHT and T.G. NELSON, Circuit Judges.

## ORDER

The petitions for rehearing and suggestions for rehearing en banc are denied as moot. The amended opinion filed October 3, 1995 has been withdrawn and the memorandum disposition filed June 29, 1995 is hereby amended. A new opinion will be filed simultaneously with this order, together with an amended memorandum disposition.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

We decide whether at sentencing a federal court may consider information revealed by a defendant in exchange for state transactional immunity. We hold that it may and affirm.

## I. BACKGROUND

In a prior state matter, the Missoula County Attorney in 1990 granted Gene and Victor Camp transactional immunity for all offenses related to the death of Peter Solberg.[1] In return, Gene led police to Solberg's body. He said Victor accidentally shot Solberg while the three were hunting together, and that they kept the death a secret because of an unrelated outstanding warrant for Gene's arrest. The State Medical Examiner found the trajectory of the bullet to be inconsistent with an accidental gunshot. The police officer who investigated Solberg's death suggested that it was most likely that Victor lured him into the brush and Gene intentionally shot him in the head.

In the case before us, the Camps were convicted of offenses related to their attempt to rob an armored truck. At sentencing, the district court departed upward on the grounds that their criminal history categories did not "adequately reflect the seriousness of [their] past criminal conduct," U.S.S.G. § 4A1.3, because their role in Solberg's death was not taken into account. The Camps appeal.

---

1. Solberg disappeared in 1979. Police had suspected the Camps since about 1980 when they discovered that Gene had forged Solberg's checks, but there was insufficient evidence to prosecute them for homicide.

## II. DISCUSSION

■ The Camps argue that the state immunity agreement shields them from any federal consequences arising from the Solberg matter. They rely on *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609–10, 12 L.Ed.2d 678 (1964), in which the Supreme Court held that "a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him." The district court concluded that *Murphy* was inapplicable because the Camps revealed the information pursuant to an immunity agreement that did not *compel* self-incrimination. We agree.

■ The purpose of *Murphy*'s exclusionary rule is to preserve the witness's privilege against self-incrimination. *Id.* "[T]he Fifth Amendment is limited to prohibiting the use of physical or moral compulsion exerted on the person asserting the privilege." *South Dakota v. Neville*, 459 U.S. 553, 562, 103 S.Ct. 916, 922, 74 L.Ed.2d 748 (1983) (quotation omitted). The *Murphy* rule therefore applies only if the witness is compelled to testify. Otherwise, there are no Fifth Amendment implications.

■ We review the totality of the circumstances to determine whether Montana's grant of immunity compelled Gene's statement. *See Arizona v. Fulminante*, 499 U.S. 279, 285, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991). We find nothing in the record to suggest that it did.

■ The grant of immunity is memorialized in a letter to the Camps' counsel. The immunity was conditional. It attached only if Gene revealed the location of Solberg's body, the body was recovered and Gene explained the circumstances of his death. The letter suggests that Gene did not give the required statement pursuant to a subpoena or other compulsory process. Rather, the statement was to be made to the police.[2] Nothing in the record indicates that Gene invoked his Fifth Amendment right prior to the grant of immunity. *See Minnesota v. Murphy*, 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409 (1984) (Fifth Amendment is not self-executing).

It does not appear that the Camps were constrained in any way to accept the state's offer of immunity. As long as Gene had the option to remain silent, his statement cannot be considered involuntary. *See United States v. Irvine*, 756 F.2d 708, 712 (9th Cir. 1985) (testimony given under negotiated, informal immunity agreement is not compelled); *see also United States v. Roberson*, 872 F.2d 597, 611 (5th Cir.1989) (use in federal prosecution of statements made pursuant to negotiated state immunity agreement does not violate Fifth Amendment).

The existence of alternatives to testifying does not always resolve the compulsion question. "[C]ertain cruel choices, and choices made in highly coercive circumstances, are proscribed by the fifth amendment even though the state, strictly speaking, does not compel an incriminating statement." *Deering v. Brown*, 839 F.2d 539, 543 (9th Cir.1988)(quotation omitted); *see also Neville*, 459 U.S. at 562–63, 103 S.Ct. at 922. But here the record does not suggest that any negative consequences would have followed if Gene had invoked the privilege. *Cf. Murphy*, 378 U.S. at 79, 84 S.Ct. at 1609–10 (witness held in contempt when, fearing federal prosecution, he refused to testify after state-granted immunity). Rejecting the offer of immunity would have meant only that Solberg's disappearance would remain a mystery and the Camps would remain suspects in an unprovable case. On this record we cannot say that Gene's "will was overborne."

---

2. Although the letter purports to grant immunity "pursuant to" Montana's immunity statute, we do not read this reference to as conferring "statutory immunity." Testimony given under a grant of statutory immunity is always compelled. *See United States v. Plummer*, 941 F.2d 799, 802 (9th Cir.1991) (statutory immunity is a response to the witness's refusal to testify before a court or grand jury and thus involves compelled testimo-

ny). Montana's statute confers immunity "only when a witness is *compelled to testify* by court order." *Montana v. Myrhow*, 262 Mont. 229, 236, 865 P.2d 231, 236 (1993) (emphasis in original). Because there was no court order here, we take this reference to relate to the discretion the statute vests in the prosecutor to grant transactional as opposed to use immunity. *See* Mont. Code § 46–15–331.

*Fulminante,* 499 U.S. at 288, 111 S.Ct. at 1253.

■ Absent any Fifth Amendment implications, the Camps' immunity agreement had the same effect as a cooperation agreement. A sentencing judge has discretion to depart upward when the defendant's criminal history category is inadequate because "for appropriate reasons, such as cooperation ... [he] had previously received an extremely lenient sentence for a serious offense." [3] USSG § 4A1.3, p.s. An upward departure is similarly appropriate here. Because they were never charged in connection with Solberg's death, the Camps' criminal history categories do not reflect gravely serious criminal conduct. The court did not err in taking that conduct into account at sentencing.

The sentences are **AFFIRMED.**\*\*

**3.** Because we find that Camp's revelations were not compelled, we do not decide if the court could have considered the Camps' conduct regardless of whether the incriminating statements were compelled. *But see Nichols v. United States,* —— U.S. ——, ———–——, 114 S.Ct. 1921, 1927–28, 128 L.Ed.2d 745 (1994) (sentencing judge " 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, *or the source from which it may come'* ") (quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)) (emphasis added).

\*\* Appellants raise other arguments regarding their convictions and sentences. A separate unpublished memorandum disposition resolves these issues.