**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles CONNELLY, Defendant–
Appellant.**

**No. 97–30233.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1998.

Decided Sept. 18, 1998.

Anthony R. Gallagher, Federal Defender, Great Falls, MT, for defendant-appellant.

Carl E. Rostad, Asst. U.S. Atty., Great Falls, MT, for plaintiff-appellee.

Before: HUG, Chief Judge, REINHARDT, Circuit Judge, and REED,* District Judge.

REED, District Judge:

Charles Connelly (hereinafter, "Defendant") pled guilty on separate occasions in 1997 to one count of bank fraud under 18 U.S.C. § 1344 and one count of credit card fraud under 18 U.S.C. § 1029(a)(2). Departing upward, and denying a requested downward adjustment for acceptance of responsibility, the district court sentenced him to 60 months for each charge, to be served concurrently. He now challenges his sentence. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## FACTS

In January 1996 Defendant approached an acquaintance, Richard Husarick, in the state of Ohio and falsely represented to him that he was a loan officer with a local bank. Persuading Mr. Husarick that he would help him consolidate his loans and obtain a line of credit, Defendant acquired an American Express card in Mr. Husarick's name. He subsequently incurred $22,274.14 in unauthorized charges.

In August 1996, after representing to Norwest Bank in Bozeman, Montana that he was an heir to the Pittsburgh Glass Company fortune, Defendant opened a savings account and deposited two checks totalling $16,500. A few days later he opened a checking account at the same Norwest Bank branch and deposited two checks totaling $21,500. All four checks were written on fraudulently es-

tablished accounts and were dishonored. On August 13, 1996 Defendant attempted to cash a check for $12,500 at the Norwest Bank branch in Billings, Montana; the teller alerted the police and Defendant was arrested. Between his first deposit and his arrest Defendant withdrew $12,169.80 from the Norwest accounts.

## PROCEEDINGS BELOW

Defendant pled guilty to the Montana bank fraud charge on January 21, 1997. Pursuant to Fed.R.Crim.P. 20, he pled guilty in federal district court in Montana to the Ohio credit card fraud charge on July 18, 1997. At that time he was sentenced to terms of 60 months for each charge, to run concurrently, followed by five years of supervised release. The district court denied a requested two-level downward adjustment for acceptance of responsibility, based largely on the court's observations at sentencing.

Additionally, the court departed upward on the ground that Defendant's criminal history category did not "adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. Specifically, in 1990 Defendant pled guilty in Ohio state court to three counts of theft, for which he received three concurrent sentences of 18 months. Because the convictions were consolidated for sentencing, they were "related" under U.S.S.G. § 4A1.2 and were therefore counted as one sentence of 18 months, resulting in three criminal history points; had he been sentenced separately on each count, he would have received six more criminal history points. *United States v. Smith,* 991 F.2d 1468, 1473 (9th Cir.1993) (citing U.S.S.G. § 4A1.2). Second, in 1993 Defendant pled guilty in Ohio state court to one count of attempted receipt of stolen property and one count of forgery, for which he was sentenced to three years' probation in a consolidated sentencing proceeding. This sentence resulted in one criminal history point;

* Honorable Edward C. Reed, Jr., Senior United States District Judge, District of Nevada, sitting    by designation.

had the two convictions not been consolidated for sentencing, he would have received one additional point. The district court departed upward in criminal history by seven points, six points for the 1990 guilty pleas and one point for the 1993 guilty plea, resulting in a criminal history score of 16 and a criminal history category of VI.

Defendant now challenges the denial of the acceptance of responsibility adjustment and the upward departure.

## DISCUSSION

### I. Standard of Review

■■■■ A district court's decision to adjust a defendant's sentence based on acceptance of responsibility is a factual determination reviewed for clear error. *United States v. Villasenor–Cesar*, 114 F.3d 970, 973 (9th Cir. 1997). A district court's decision to depart from the Sentencing Guidelines range is reviewed for abuse of discretion. *United States v. Sablan*, 114 F.3d 913, 916 (9th Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). This standard also applies where the court departs from a criminal history category. *United States v. Goshea*, 94 F.3d 1361, 1363 (9th Cir.1996). Although a district court abuses its discretion when it makes an error of law, our abuse of discretion standard includes review to determine whether the district court's discretion was guided by erroneous legal conclusions. *United States v. Koon*, 518 U.S. 81, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996).

### II. Acceptance of Responsibility

■■■■ ."If the defendant clearly demonstrates acceptance of responsibility" for his offense, then he qualifies for, in this case, a two-level downward adjustment in offense level. U.S.S.G. § 3E1.1(a). Although pleading guilty and truthfully admitting the offense conduct constitute "significant evidence of acceptance of responsibility," this evidence may be outweighed by conduct inconsistent with such acceptance of responsibility. U.S.S.G. § 3E1.1, App. note 3; *United States v. Vance*, 62 F.3d 1152, 1159 (9th Cir.1995). In particular, a failure to demonstrate contri-

tion and remorse weighs against a finding of acceptance of responsibility, because "implicit in acceptance of responsibility is an admission of moral wrongdoing," as Defendant concedes. *United States v. Gallant*, 136 F.3d 1246, 1248 (9th Cir.1998); *see United States v. Davis*, 36 F.3d 1424, 1435–36 (9th Cir.1994) (under pre–1992 version of § 3E1.1, affirmative evidence of contrition warrants adjustment), *cert. denied sub nom., Williams v. U.S.*, 513 U.S. 1171, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995). Lying about offense conduct or relevant conduct also weighs against acceptance of responsibility. *Vance*, 62 F.3d at 1160.

■■■■ The district court denied the adjustment because Defendant "clearly stated . . . that it's always somebody else's fault . . . [and] laid out a pretty good story about what appeared to be a Robin Hood theory of what he was doing." This holding is not clearly erroneous. Regarding the Montana bank fraud count, Defendant asserted at sentencing:

> I went to Norwest Bank in Bozeman and I opened an account with a check that wasn't good from a brokerage company that I got from New York to buy food and housing and HIV medication.

Defendant may have at one time thought he was HIV-positive; however, in his allocution he acknowledged that he is not. In any event, of the money placed in the Bozeman account, he spent $6500 on a car and $469 on a mountain bike, and lost $3000 in a poker game. Regarding the Ohio credit card count, Defendant stated:

> [Mr. Husarick] had an AIDS fund-raising through the Gay Pride festival in which he took the money, from the bar [he owns], and never got it to the people who were supposed to receive it. And so I went—he told me that he was trying to get a loan from the bank. The guy is crooked. Crooked as could be. . . . He gave me a corporate credit card. I went and bought furniture and things. I went and bought things that the AIDS money was supposed to buy. But I was not authorized to make those purchases on the credit card because, apparently, I obtained a credit card

without—I mean, under fraudulent conditions, fraudulent terms.

...

I mean, you know, what I did wasn't right. I understand that. . . . But, unfortunately, in—in the system today, if you get ill, you don't have your Government help you out, you're stuck by yourself.

Defendant demonstrated neither contrition nor remorse, and told a "Robin Hood story" regarding the motive behind his frauds. His statements at sentencing are sufficiently inconsistent with acceptance of responsibility to warrant denial of a downward adjustment.

### III. Upward Departure in Criminal History Category

The district court departed upward pursuant to U.S.S.G. § 4A1.3, which permits departures based upon under-representation of criminal history, observing:

based upon the criminal history and my observations of the Defendant himself, his manner of speaking to the Court and his way indicates to me that it is highly unlikely that this individual is going to not be a recidivist and that he has demonstrated the pattern of conduct throughout his life that would indicate to me he's likely to continue. And, therefore, I find that the criminal history that is stated as nine is under-represented.

The district court departed seven points in criminal history, six points for the 1990 guilty pleas and one point for the 1993 guilty plea, resulting in a post-departure criminal history category of VI. Defendant challenges the decision to depart.

### A. The Sentencing Guidelines

"An upward departure may be warranted when the defendant has committed crimes or conduct that the criminal history calculation instructions fail specifically to consider." *United States v. Henderson*, 993 F.2d 187, 189 (9th Cir.1993) (citation omitted). We limit our review to the reasons actually given by the sentencing court. *Id.; see also United States v. Green*, 105 F.3d 1321, 1322 (9th Cir.1997) (sentencing court's rationale must be "sufficiently specific . . . to allow appellate review").

A sentencing court engages in a four-step departure analysis: 1) it identifies what features of the case potentially take it outside the Guidelines' "heartland" and make of it a special or unusual case, 2) it determines whether the Commission has forbidden departures based on those features, 3) if not, it determines whether the Commission has encouraged departures based on those features, and 4) if not, it determines whether the Commission has discouraged departures based on those features. *Sablan*, 114 F.3d at 916. If the special features are forbidden bases for departure, the sentencing court cannot use them to depart; examples are race, sex, national origin, creed, religion, socio-economic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship. *Id.* at 916–17. If the special factors are encouraged, the court is authorized to depart if the applicable Guideline does not already take them into account. *Id.* at 917. If the special factors are discouraged, or encouraged but already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. *Id.*

The issue in criminal history category departures—i.e., "horizontal" departures—is whether reliable information demonstrates that the criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. This standard is met "when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." *United States v. Carrillo-Alvarez*, 3 F.3d 316, 320 (9th Cir.1993) (citing U.S.S.G. § 4A1.3). One circumstance where criminal history may be inadequate, and departure may be warranted, is where "sentences were treated as related because the cases were consolidated for sentencing" and some convictions were therefore not separately counted in criminal history. U.S.S.G. § 4A1.2, App. note 3. Because "the Sentencing Guidelines specifically contemplate" such

a scenario as a ground for departure, departure is encouraged in this case, and a sentencing court is authorized to depart so long as § 4A1.3 is satisfied. *United States v. Hines,* 26 F.3d 1469, 1478 (9th Cir.1994); U.S.S.G. § 4A1.2, App. note 3.

## B. Application

The Presentence Report details the past criminal conduct upon which the district court relied, which we summarize as follows:

May 1989 ran up $28,000 in unpaid charges on wife's credit card, failed to pay rent

June 1989 stole $20,000 from in-laws

Aug. 1989 passed bad check for $2500

Nov. 1991 stole car and $3000 in jewelry, charged $400 on credit card

Nov. 1991 forged $2000 check

For each 1989 conviction, Defendant received concurrent sentences of 18 months. His 1991 convictions resulted in a suspended six month prison sentence, three years probation, and $6500 restitution.

The question presented is whether this conduct satisfies § 4A1.3. Our case law reveals that if criminal history category significantly under-represents either 1) the "seriousness of the defendant's criminal history" or 2) the "likelihood that the defendant will commit further crimes," then § 4A1.3 is satisfied. *United States v. G.L.,* 143 F.3d 1249, 1254–55 (9th Cir.1998); *see also United States v. George,* 56 F.3d 1078, 1085 (9th Cir.) ("propensity to commit further crimes" will support departure), *cert. denied,* 516 U.S. 937, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995); *United States v. Smallwood,* 35 F.3d 414, 417 n. 4 (9th Cir.1994) (§ 4A1.3 has two prongs); *United States v. Reyes,* 8 F.3d 1379, 1385 n. 13 (9th Cir.1993) (suggesting in dicta that § 4A1.3 has two prongs). The district court plainly departed based upon the second prong, Defendant's "likelihood of recidivism."

### 1. Seriousness

Despite the standard enunciated in the Guideline, the examples of departure-worthy conduct listed in § 4A1.3 imply that uncounted criminal conduct must in all cases cross a threshold of "seriousness" to support

a departure, and at least two of our cases so hold. *Carrillo–Alvarez,* 3 F.3d at 321–22; *United States v. Brady,* 928 F.2d 844, 853 & n. 16 (9th Cir.1991), *overruled in part by Nichols v. United States,* 511 U.S. 738, 748–49, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). We have nonetheless upheld departures without an explicit showing of seriousness. *E.g., United States v. Goshea,* 94 F.3d 1361, 1364 (9th Cir.1996); *United States v. Segura–Del Real,* 83 F.3d 275, 278 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 328, 136 L.Ed.2d 242 (1996); *United States v. Myers,* 41 F.3d 531 (9th Cir.1994); *United States v. Montenegro–Rojo,* 908 F.2d 425, 429–30 (9th Cir.1990). Since we conclude that Defendant's "uncounted" conduct is serious, however, we need not wrestle further with this unbriefed issue.

Case law guides us in assessing the seriousness of criminal conduct. We have reversed departures for uncounted shoplifting and simple marijuana possession (*G.L.,* 143 F.3d at 1254–55), auto burglary (*Carrillo–Alvarez,* 3 F.3d at 322), and misdemeanor assault and battery (*Brady,* 928 F.2d at 853). By contrast, we have upheld departures for uncounted assault with a deadly weapon (*G.L.,* 143 F.3d at 1254–55), impersonating a military officer (*Goshea,* 94 F.3d at 1364), first degree robbery (*United States v. Beasley,* 90 F.3d 400, 403 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996)), miscellaneous immigration violations (*Segura–Del Real,* 83 F.3d at 278), homicide (*United States v. Camp,* 72 F.3d 759, 762 (9th Cir.1995), *cert. denied,* 517 U.S. 1162, 116 S.Ct. 1557, 134 L.Ed.2d 658 (1996)), marijuana trafficking (*United States v. Ponce,* 51 F.3d 820, 828 (9th Cir.1995)), and prison fights and public transportation fare evasion (*Montenegro–Rojo,* 908 F.2d at 429–30).

Defendant's thefts and frauds are clearly more serious than shoplifting, marijuana possession, and misdemeanor assault and battery, and are probably more serious than auto burglary. They are also more serious than immigration violations, fare evasion, and impersonating a military officer. Consequently, Defendant's conduct falls within the "serious" category. *Myers,* the most closely

analogous case involving § 4A1.3, bolsters this conclusion. In *Myers* the defendant pled guilty to wire fraud, and while awaiting sentencing obtained $1,690 through another act of wire fraud. We observed that "Myers' post-offense conduct is ... serious" and accordingly affirmed the district court's departure. *Myers*, 41 F.3d at 534. If theft of $1,690 through wire fraud is serious, then theft of at least $2000 through credit card fraud, forgery, and plain old larceny is also serious and supports horizontal departure.

### 2. Likelihood of Recidivism

Departure is also justified purely on the basis of Defendant's likelihood of recidivism. The principal factors we apply in assessing likelihood of recidivism are 1) the quantity (or "repetitiveness") of uncounted criminal conduct, 2) the similarity of uncounted criminal conduct to the offense conduct, and 3) the degree to which the defendant has been deterred by prior sentences. *Segura–Del Real*, 83 F.3d at 277–78; *United States v. Chatlin*, 51 F.3d 869, 873 (9th Cir.1995); *Myers*, 41 F.3d at 534; *Montenegro–Rojo*, 908 F.2d at 429–30. In this case, Defendant's May 1989 and November 1991 unauthorized use of credit cards are both strikingly similar to the instant Ohio credit card fraud, and all of his uncounted conduct, like the instant offenses, involve stealing from people who trusted him. Moreover, Defendant's sentences have been relatively ineffective at deterring him from committing other frauds; indeed, it appears he committed his 1991 crimes not long after completing the prison term for his 1989 crimes. As for the quantity of prior criminal conduct, Defendant's "uncounted" record is not as extensive as that of the defendants in *Segura–Del Real* and *Montenegro–Rojo*, but it is longer than that of the defendant in *Goshea* and about the same as that of the defendant in *Beasley*. On the whole, Defendant's likelihood of recidivism is significantly under-represented by his criminal history category, and departure was not an abuse of discretion.

### CONCLUSION

The district court's denial of the adjustment for acceptance of responsibility was not clearly erroneous, and the court did not abuse its discretion in departing upward. Since Defendant does not challenge the extent of the district court's departure, we do not reach that issue.

AFFIRMED.

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I and II of the court's opinion, but dissent from Part III. I would hold that the district court abused its discretion in departing upward regarding Connelly's criminal history, and would therefore vacate that part of his sentence and remand for resentencing.

As the majority recognizes, the guidelines provide that when prior independent crimes are "consolidated for trial or sentencing," the resultant sentences are counted as a single sentence for the purpose of criminal history calculations. USSG § 4A1.2, App. Note 3. Consolidated sentences are a common occurrence, and, by explicitly determining that they should be treated as single sentences, it is apparent that the Sentencing Commission intended upward departures on that basis to be the exception rather than the rule. The guidelines expressly state that prior, consolidated sentences must "significantly underrepresent" the defendant's criminal history or his propensity for recidivism to warrant an upward departure from the defendant's "heartland" criminal history category. USSG § 4A1.3.

It follows directly from this "significant underrepresentation" requirement that consolidated sentences do not provide permissible grounds for upward departures unless they were imposed for "serious" offenses. In fact, Application Note 3 to guideline § 4A1.2 says as much. It explains the criminal history points assigned to a consolidated sentence "may not adequately reflect the *seriousness* of the defendant's criminal history ..., [f]or example, if [the] defendant was convicted of a number of *serious* non-violent offenses committed on different occasions." (emphasis added). This qualifier is reiterated in both other places the guidelines address the issue. First, guideline § 4A1.3, the controlling

guideline in this case, provides that district courts may base an upward departure on "prior sentence(s) *of substantially more than one year* imposed as a result of independent crimes committed on different occasions." USSG § 4A1.3(b) (emphasis added). Second, § 4A1.3's policy statement states that an upward departure would be permissible when a defendant "had received a prior consolidated sentence of *ten years* for a series of *serious assaults.*" (emphasis added).

Our prior cases also emphasize § 4A1.3's "seriousness" requirement. In *United States v. Brady*, 928 F.2d 844 (9th Cir.1991), *overruled in part on other grounds by Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), we reversed an upward departure based on two prior, uncounted convictions that resulted in sentences of less than 30 days. We explained that:

> [T]he five examples listed by the [Sentencing] Commission as possible grounds for departure *all* make reference to previous *"serious"* or *"large-scale"* offenses which have not been included in the criminal history calculation. Neither of Brady's tribal assault convictions, both sentences of less than 30 days, represent *this level of seriousness.*

*Id.* at 853. We similarly refused to permit an upward departure based on a prior, uncounted auto burglary conviction in *United States v. Carrillo–Alvarez*, 3 F.3d 316, 321–22 (9th Cir.1993), reasoning that "[h]is offense was neither 'serious' nor 'large-scale.'" *Id.* at 322. The Tenth Circuit—the only other circuit of which I am aware that has directly addressed the issue—has also held that the guidelines' provisions governing criminal history upward departures "require[ ] that our focus remain on distinguishing [uncounted] offenses to be regarded as 'serious' from within the realm of all criminal behavior." *United States v. Wyne*, 41 F.3d 1405, 1409 (10th Cir.1994) (emphasis added). Thus, although a couple of our cases have upheld departures without, in the words of the majority, "an explicit showing of seriousness," maj. op. at 984, I think it plain that both the text of the guidelines and precedent require that circumstance to be present.[1]

Applying this rule to the present case, I believe that the district court erred in basing an upward departure on each of Connelly's prior, consolidated sentences. First, it seems obvious that Connelly's prior, consolidated probationary period for forging a $2000 check is not serious enough to support a departure. Because the district court expressly increased Connelly's criminal history category in part on the basis of that sentence, this "improper consideration" alone requires that we vacate and remand. *See United States v. Donaghe*, 50 F.3d 608, 611–12 (9th Cir.1994) (holding that "[f]or the upward departure to be valid, *all* [of the] factors [considered] must be proper bases for departure" and if one factor is invalid we must "'vacate the sentence and remand for resentencing'") (quoting *United States v. Montenegro–Rojo*, 908 F.2d 425, 428 (9th Cir. 1990)) (emphasis added). A probationary period is less than the 30–day sentence we found inadequate in *Brady*, and is nowhere near the statute's guideline that the prior sentence be *"substantially more than one year* imposed as a result of independent crimes committed on different occasions." USSG § 4A1.3(b) (emphasis added).[2]

---

1. I do not understand the majority's claim that the question of "seriousness" is an "unbriefed issue." Connelly argued repeatedly in his brief that departure was warranted only "when a defendant's criminal history category *significantly* under-represents *seriousness* of his criminal history or likelihood that defendant will commit further crimes." Appellant's Brief at 20 (emphasis added); *see also id.* (arguing that departures are proper "only when Guidelines do not adequately reflect *seriousness* of an offender's past criminal conduct") (emphasis added). Thus, this issue is clearly before us.

2. *United States v. Myers*, 41 F.3d 531 (9th Cir. 1994), upon which the majority relies and which it asserts is our "most closely analogous" case on this point, is actually not analogous at all. In that case, the defendant's "uncounted" criminal history did not even arise from a prior sentence. Rather, the uncounted conduct was a wire fraud that the defendant perpetrated *after* the conviction at issue, while awaiting sentencing. It was that critical and unique fact (i.e., the timing of events)—not the gravity of the fraud—that led us to conclude that "Myers' post-offense criminal conduct is not only serious; it constitutes the strongest possible evidence of a likelihood that she will continue to commit similar crimes in the

Second, Connelly's prior sentence of 18 months for prior frauds involving between $ 2,500 and $28,000 is also not evidence of sufficiently "serious" prior criminal conduct to warrant a departure from the guidelines' heartland. While the length of the prior sentence may not be entirely dispositive on this point, I do believe that it provides significant guidance, both because the guidelines themselves repeatedly refer to sentence length in measuring seriousness and because sentences are generally designed to reflect the seriousness of criminal conduct. An 18–month consolidated sentence for a few small-time frauds is not one that is "substantially more than one year" pursuant to "serious" offenses and is a far cry from § 4A1.3's example—a 10–year sentence for a series of serious assaults. *See Wyne,* 41 F.3d at 1408 (reversing an upward departure based on prior, uncounted sentences of 13 months or less because, given the guidelines one-year guidepost, such crimes were not "evidence of 'serious' criminal conduct"). Nor, in my opinion, does failing to account for such a sentence "significantly underrepresent" the criminal history of a defendant such as Connelly who is already at a criminal history level of IV.

Finally, I disagree with the majority's assertion that the district court's departure is "justified purely on the basis of Defendant's likelihood of recidivism." Maj. op. at 985. While the text of section § 4A1.3 indicates that likelihood of recidivism alone might support an upward departure, the guidelines' examples (which are mentioned above) do not differentiate between recidivism and under-represented criminal history. This structure strongly suggests that both of the bases of § 4A1.3 departures must be supported by serious, uncounted criminal conduct.

But even assuming that an unusually high potential for recidivism not evidenced by serious, uncounted prior consolidated sentences could, in itself, support an upward departure, this surely is not such a case. Connelly has three uncounted prior offenses. Given that the guidelines expressly contemplate counting consolidated sentences together, I cannot see how such a small number of uncounted sentences removes him from the heartland of category IV, which is already a highly recidivist category; and neither the district court nor the majority points to any evidence that indicates that three "uncounted" sentences is unusual for a defendant in category IV. *See Donaghe,* 50 F.3d at 611 (holding that on review we do " 'not search the record for permissible reasons for departure; instead, [we] analyze[ ] the reasons actually given by the district court' ") (quoting *Montenegro–Rojo,* 908 F.2d at 428). Nor does anything in the district court's decision, or even the record as a whole, suggest that Connelly has been deterred by his prior sentences to a lesser degree than the typical defendant who has amassed a category IV criminal history. *See id.*

That leaves the majority's final basis for affirmance: the similarity of Connelly's uncounted conduct to his offense conduct. First, because the district court did not rely on this reason, the majority plainly errs in doing so. *See id.* While the majority acknowledges the existence of our rule requiring reversal in this circumstance, *see* maj. op. at 983, it simply fails to consider or apply it here, choosing instead simply to ignore the plain facts. Second, even if the district court had relied on this justification, a departure on this ground makes little, if any, sense. Someone who is in category IV is likely to have committed several offenses of the same general type. Here, the general type of offense identified by the majority is "stealing from people who trusted him," maj. op. at 985—in other words, non-violent economic offenses. It is true that individuals who commit fraud and earn enough criminal history points to achieve classification as category IV offenders usually have not varied their criminal careers by committing rape, murder, or mayhem. Thus, I would suspect that the

future." *Id.* at 534; *see also id.* (emphasizing that unlike the Sentencing Commission's explicit consideration of uncounted sentences *prior* to conviction, "[n]othing in the Guidelines indicates that the Sentencing Commission adequately considered a defendant's *post-offense* conduct as ag-

gravating sentence warranting an upward departure"). Hence, Connelly's prior probation for his fraud is decidedly different than Myers' because it had occurred several years before the instant sentencing and had already been completely adjudicated.

defendant is a fairly typical economic crime or fraud offender of the category IV class. That is, of course, a reason for non-enhancement, not a justification for enhancing—and especially not a justification for enhancing in order to be able to impose the length of sentence the court has predetermined is appropriate when it is dissatisfied with the prescribed guideline sentence. And that, indeed, is what occurred here. The district court deemed in advance that in its view Connelly's criminal conduct did not place him in "an acceptable range for sentencing" under the guidelines. Therefore, it decided to enhance. Yet neither the district court's reliance on Connelly's prior, uncounted sentences nor the majority's improper addition of other inappropriate reasons provides a legal basis for an upward departure in Connelly's case on the basis of potential recidivism.

Accordingly, I would vacate the upward departure and remand for resentencing.