**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 28 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

JOSE A. CARREON-ORTEGA,

    Defendant - Appellant.

No. 98-1124

(D. Colorado)

(D.C. No. 97-CR-288-S)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **McKAY** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

On October 31, 1997, Jose A. Carreon-Ortega entered into a plea agreement under which he agreed to plead guilty to illegally re-entering the United States in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). On March 27, 1998, at a subsequent sentencing hearing, Carreon-Ortega was sentenced to a term of 71 months imprisonment for his offense. In imposing this sentence, the district court departed upward from the applicable range dictated by federal sentencing guidelines. The sole issue presented in this appeal is whether the district court erred by departing from the guideline range. For the reasons discussed below, we affirm the decision of the district court.

**BACKGROUND**

Carreon-Ortega is a citizen of Mexico. In 1988, while in Colorado, he was convicted of disturbing the peace and shoplifting. For these offenses, he was fined and released (although the fines weren't paid until 1994, and in 1989 he had a warrant issued for his arrest). In 1988 and 1989, Carreon-Ortega engaged in a series of criminal acts against a woman and her young children. On July 18, 1988, the woman left her children in Carreon-Ortega's care for a short time while she went out. During the time the woman was gone, Carreon-Ortega sexually abused the woman's three young daughters. Later that same year, in September 1988, Carreon-Ortega "pushed his way into the victim's trailer and stole her

wallet containing $170." Presentence Investigation Report, R. Supp. Vol. 1, at 7. In December of that same year, he and two companions accosted the woman from behind on a street and stole her purse, which contained $100 in cash and $300 in food stamps. The very next day, Carreon-Ortega threw an object through the woman's trailer window, and was heard to state "I'm going to get you." Id. at 8. In March 1989, he and one companion again accosted the woman on a street and took her bag, this time containing $250 in cash. For this series of offenses, Carreon-Ortega was charged with three counts of sexual assault of a child, one count of burglary, one count of robbery, three counts of misdemeanor theft, one count of intimidating a witness, and one count of misdemeanor harassment.

On November 8, 1990, he entered into a plea agreement, under which he pled guilty to one felony count of sexual assault of a child, three separate counts of misdemeanor theft, and one count of misdemeanor harassment. He was sentenced to four years' imprisonment on the sexual abuse charge, and to six months' imprisonment on each of the misdemeanor charges. The sentences ran concurrently, and Carreon-Ortega served his time in prison. Upon his release from prison, he was deported to Mexico on January 6, 1994.

On October 13, 1994, a man by the name of Jose Carreon-Ortega was arrested in Denver, based on the two outstanding warrants for failure to pay the fines related to the 1988 disturbing the peace and shoplifting convictions. The

-3-

man arrested in Denver paid the outstanding fines. However, Carreon-Ortega disputes that he was the man arrested in Denver in October 1994 and claims that he was still in Mexico at that time. If the man arrested really was the Jose Carreon-Ortega who is the defendant in this case, then Carreon-Ortega had re-entered the country illegally in 1994, because he had not sought or obtained permission from the Attorney General to re-enter the United States. In any event, the man calling himself Jose Carreon-Ortega was "released back" from custody of the Denver police because "the INS was too busy to go pick him up." R. Vol. 6 at 6.

Carreon-Ortega, for his part, claims that after his deportation, he first re-entered the country in May 1996. His presence in this country was discovered in July 1997, when he was arrested on suspicion of first degree sexual assault. Colorado prosecutors later dropped the charges and declined to prosecute Carreon-Ortega for this offense. However, his arrest was enough to alert federal authorities to his presence in the United States, and, apparently, this time they were not too busy to pick him up. On September 8, 1997, he was officially charged with aggravated re-entry into the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

On October 31, 1997, Carreon-Ortega entered into a plea agreement with federal prosecutors, under which he agreed to plead guilty to the illegal re-entry

charge, if the government would recommend a sentence at the bottom of the applicable guideline range, which the parties agreed was 46-57 months. This sentence range was based on a base offense level of 21, and a criminal history score of five—three points for the felony sexual abuse charge and two points for the related misdemeanor theft and harassment charges. This score placed Carreon-Ortega in criminal history category III.

The presentence investigation report, however, issued November 25, 1997, assigned Carreon-Ortega a criminal history score of nine, which placed him in criminal history category IV, with a higher sentencing range of 57-71 months. This higher score was based on one additional point for the 1988 shoplifting charge, one additional point, under § 4A1.1(f) of the sentencing guidelines, because the probation officer considered the misdemeanor harassment charge to be violent, and two additional points, under § 4A1.1(e), because the probation officer considered part of the instant offense (illegal re-entry) to have been committed less than two years following Carreon-Ortega's release from custody. The probation officer based his recommendation regarding the last two additional points on the premise that the man arrested in Denver in 1994 was the same Jose Carreon-Ortega who is the defendant in this case. The probation officer also noted that, if the three theft and one harassment convictions were for some reason not considered related, then Carreon-Ortega would have a criminal history score

above 13, placing him in criminal history category VI. The officer recommended, however, that the four misdemeanor convictions be considered related because there was a common victim. The probation officer pointed out to the court that perhaps an upward departure would be warranted in this case according to the sentencing guidelines, if the court were to determine that Carreon-Ortega's criminal history score underrepresented his criminal history.

On February 25, 1998, Carreon-Ortega filed objections to the presentence report. First, he objected to the probation officer's one-point addition for the harassment charge, arguing that class 3 misdemeanors in Colorado carry a maximum sentence of six months in jail, and therefore can never be "violent" crimes as defined by the sentencing guidelines in § 4B1.2(a), which restricts the definition of "crimes of violence" to crimes punishable by more than one year. Second, he objected to the probation officer's two-point addition stemming from the alleged 1994 re-entry, because of Carreon-Ortega's assertion that he was not the man arrested in Denver in 1994 and that he had re-entered the country, for the first time since his deportation, in May 1996. Third, he objected to the two-point assessment for the misdemeanor theft and harassment charges, contending that these charges were related to the felony sexual abuse charge. Finally, he moved the court to downward depart from the sentencing guidelines' range, because he claimed his criminal history was overrepresented by his criminal history score.

-6-

The district court, in a hearing on March 11, 1998, sustained Carreon-Ortega's first objection, ruling that the harassment charge could not have been a crime of violence. In the same hearing, the district court overruled Carreon-Ortega's third objection, ruling that the misdemeanor theft and harassment charges, while related to each other, were not related to the sexual abuse charge because different victims were involved. The court postponed any ruling on Carreon-Ortega's second objection, in order to give the government time to gather evidence that the man arrested in Denver in 1994 really was the defendant.

The district court held another hearing on March 27, 1998, to consider Carreon-Ortega's second objection, and to consider whether to depart upward or downward from the applicable guideline range. At that hearing, the government admitted that it could not produce any hard evidence that the man arrested in Denver in 1994 really was the defendant, and so the district court sustained Carreon-Ortega's second objection. After ruling on all of the objections, the court determined that Carreon-Ortega had a criminal history score of six, which placed him, as anticipated by the plea agreement, in criminal history category III, which carries, at base offense level 21, a range of 46-57 months imprisonment.

The district court concluded, however, that criminal history category III "is inadequate to reflect the criminal history category to be assigned and that this defendant's criminal history is significantly more serious that other defendants in

the criminal history category III" and that "his criminal history category underrepresents his criminal history." R. Vol. 7 at 24. The court departed upward from this category, to criminal history category IV. To support this determination, the district court cited § 4A1.3 of the Sentencing Guidelines, and one of the application notes following § 4A1.2. Section 4A1.3 authorizes courts to depart upward from the guideline range where "reliable information" indicates underrepresentation; the application note to § 4A1.2 specifically mentions that related but uncounted cases can, in some cases, give rise to a situation of underrepresentation. The district court stated that all but one of the misdemeanor theft and harassment convictions had gone uncounted under the guidelines, and that therefore Carreon-Ortega's criminal history score underrepresented his true criminal history. The district court also stated that Carreon-Ortega was originally charged with burglary and robbery, much more serious offenses than those to which he pled guilty, and "mentioned," while explicitly stating that these factors played no role in its decision, that Carreon-Ortega was suspected to have illegally re-entered the country in 1994, and that he had been arrested, although not charged or prosecuted, with another count of sexual assault in 1997.     Id. at 26-28.

The district court proceeded to sentence Carreon-Ortega as though he were in criminal history category IV, and imposed a sentence—71 months imprisonment—at the upper end of the category IV guideline range.

Carreon-Ortega now appeals from the district court's decision to depart upward from the applicable sentencing guideline range. He argues that the district court impermissibly used unproven charges, such as the 1988 robbery and burglary charges, the 1994 arrest, and the 1997 sexual assault arrest, as the basis for its upward departure, and argues that his criminal history, if anything, is overrepresented by a criminal history score of six.

**STANDARD OF REVIEW**

When reviewing district court decisions to depart from the sentencing guidelines, appellate courts are to apply "a unitary abuse-of-discretion standard." Koon v. United States, 518 U.S. 81, 100 (1996). This standard "includes review to determine that the discretion was not guided by erroneous legal conclusions." Id. We have recently stated that appellate courts, in conducting this review, must undertake a four-step evaluation of the district court's decision to depart:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure[;] (3) whether the record sufficiently supports the factual basis underlying the departure[;] and (4) whether the degree of departure is reasonable. In performing this review, Koon tells us

that an appellate court need not defer to the district court's resolution of the first question, whether a factor is a permissible departure factor under any circumstances, but must give "substantial deference" to the district court's resolution of the second question, whether "a particular [defendant] is within the heartland given all the facts of the case."

United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997) (citing and quoting Koon).

## DISCUSSION

**I.      Step One–Permissibility of Departure Factors**

Our starting point, in any discussion of departure from the sentencing guidelines, must be the statutory pronouncements of Congress and the related pronouncements of the United States Sentencing Commission.  Congress has instructed courts not to depart from the applicable sentencing guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  18 U.S.C. § 3553(b); U.S. Sentencing Guidelines Manual § 5K2.0 (1998).  We have held that upward departures under § 4A1.3, such as the one employed by the district court in this case, are a subset of departures under § 5K2.0.      See United States v. Maldonado-Campos, 920 F.2d 714, 719 n.2 (10th Cir. 1990).  Section 4A1.3 permits an upward departure when "reliable information indicates that the criminal history

-10-

category does not adequately reflect the seriousness of the defendant's past criminal conduct  or the likelihood that the defendant will commit other crimes" (emphasis added). The district court, in imposing the upward departure in this case, seemed to rely largely on the first prong,     [1] stating that "I think this is an atypical case. Factual basis for departure is that . . . the defendant was assessed only five criminal history points as a result of five convictions." R. Vol. 7, at 25.

We must first determine whether the district court's stated ground for departure is a permissible ground. Underrepresentation of a defendant's criminal history is clearly a permissible ground for an upward departure. "Because section 4A1.3 provides an encouraged basis for departure not already taken into account by the Commission, over-representation of a defendant's criminal history or likelihood for recidivism always will be an approved ground for departure." Collins, 122 F.3d at 1304.

---

[1]The district court did mention, seemingly in passing, that recidivism was also a factor, stating that "I think there is ample authority for an upward departure in this matter, and that the facts and circumstances surrounding this defendant's past history and his possibility or probability of recidivism clearly indicate that a departure upward of one category is clearly appropriate." R. Vol. 7, at 28. The district court also stated that Carreon-Ortega had been "coming back and forth across the border every time he sees fit," and that "it's pretty obvious his purpose is to commit crimes because every time he has been here he has done that." R. Vol. 6, at 8, 9. However, the district court clearly indicated that the major basis for the upward departure was its determination that Carreon-Ortega's criminal history was underrepresented by his criminal history score.

But this does not end the inquiry. We must next determine whether the factual bases set forth by the district court in support of its finding of underrepresentation are themselves permissible grounds for departure. See id. (stating that "[t]hese supporting facts themselves must constitute permissible grounds for departure"). Upon examination, we think the factual bases relied upon by the district court constitute permissible grounds for departure.

Under the sentencing guidelines, "[p]rior sentences imposed in related cases are to be treated as one sentence" for the purposes of tabulating criminal history points. U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (1998). "[P]rior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." Id. § 4A1.2, Application Note 3. In this case, the district court found that the three theft convictions and the one harassment conviction were related under this section. As a result, Carreon-Ortega was assigned only two criminal history points for these convictions.

The Sentencing Commission explicitly recognized that this rule regarding related offenses could result in several convictions going uncounted. The Commission stated that "court[s] should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the

danger that he presents to the public." Id. This court has sanctioned similar upward departures in prior cases, where the district court determined that the defendant's criminal history was underrepresented due to uncounted "related" offenses. See United States v. White, 893 F.2d 276, 280 (10th Cir. 1990) (upholding a district court's decision to depart upward because of uncounted related offenses, and stating that "[w]e have little difficulty in concluding that . . . the district court's justifications for departure were not already adequately considered by the Sentencing Commission in formulating the guidelines, . . . since the Sentencing Commission explicitly stated" in Application Note 3 that uncounted offenses could give rise to underrepresentation); see also United States v. Rivas, 922 F.2d 1501, 1504-05 (10th Cir. 1991) (making a similar holding). Other circuits have also sanctioned upward departures under similar circumstances, citing Application Note 3. See, e.g., United States v. Connelly, 156 F.3d 978, 983 (9th Cir. 1998); United States v. Gammon, 961 F.2d 103, 106 (7th Cir. 1992); United States v. Ocasio, 914 F.2d 330, 334 (1st Cir. 1990); United States v. Metcalf, 898 F.2d 43, 46 n.6 (5th Cir. 1990); United States v. Jackson, 883 F.2d 1007, 1009 (11th Cir. 1989). Thus, it is beyond question that a district court may depart upward from the sentencing guidelines' heartland when it determines that the defendant's criminal history is underrepresented due to uncounted "related" offenses.

Finally, we must determine whether the specific factual circumstances described by the district court in this case, in support of its finding of underrepresentation, "are permissible departure factors." Collins, 122 F.3d at 1305. In this case, the district court cited three uncounted misdemeanor offenses; Carreon-Ortega was given only two criminal history points for four separate convictions of misdemeanor theft and harassment. The question before us is whether an upward departure is permissible on these facts, and, specifically, whether an upward departure is permissible on the basis of uncounted misdemeanor offenses.

At least one circuit has, at least most of the time, imposed a "seriousness" requirement for upward departures based on uncounted criminal conduct, stating that "uncounted criminal conduct must in all cases cross a threshold of 'seriousness' to support a departure." Connelly, 156 F.3d at 984 (although citing some Ninth Circuit cases which did not require an "explicit showing of seriousness"). The Ninth Circuit implies such a requirement from the language of § 4A1.3 and from "the examples of departure-worthy conduct listed in § 4A1.3." Id.; see also United States v. Carrillo-Alvarez, 3 F.3d 316, 320 (9th Cir. 1993). This circuit has never explicitly adopted this "seriousness" requirement in cases

construing Application Note 3. [2] Other circuits either have not addressed the issue, or have been willing to impose upward departures on the basis of uncounted misdemeanor offenses. <u>See</u> <u>Gammon</u>, 961 F.2d at 106 (approving a district court decision to upward depart based on an uncounted conviction for a "lesser included offense of theft"); <u>cf.</u> <u>United States v. Carpenter</u>, 963 F.2d 736, 744 (5th Cir. 1992) (approving a district court decision to depart upward on the basis of a "juvenile adjudication for burglary and a misdemeanor conviction for theft" where both were "outside the limitations period"; this latter conviction involved a "violent purse snatching"). There are also a number of cases within the Ninth Circuit which have increased sentences based on uncounted misdemeanor convictions. <u>See</u>, <u>e.g.</u>, <u>United States v. Durham</u>, 941 F.2d 858, 862-63 (9th Cir. 1991) (making no mention of a "seriousness" requirement, and sanctioning an upward departure based on "prior misdemeanors").

Even under the Ninth Circuit line of cases applying the "seriousness" requirement in Application Note 3 cases, the application of the rule has been less than uniform. For instance, the Ninth Circuit has termed immigration violations, marijuana trafficking, and prison fights and public transportation fare evasion as

---

[2]We have, however, imposed such a requirement in cases construing Application Note 8. <u>See</u> <u>United States v. Wyne</u>, 41 F.3d 1405, 1408-09 (10th Cir. 1994). This requirement is compelled by the express language of Application Note 8, which allows upward departures for "serious dissimilar" conduct committed outside the time periods dictated by the sentencing guidelines.

"serious" conduct, while declaring that auto burglary and tribal convictions for assault and battery fall outside the "serious" category. See Connelly , 156 F.3d at 984 (citing cases). It appears to us that even under the Ninth Circuit's rule, some misdemeanors would qualify as "serious" conduct while others would not. Application of the Ninth Circuit's rule would not necessarily aid Carreon-Ortega.

However, we do not think we need to decide, in this case, whether we would apply a similar rule in Application Note 3 cases. Even assuming, arguendo, that such a rule applied in this case, we think Carreon-Ortega's conduct is sufficiently serious to form a permissible basis for an upward departure, even under the Ninth Circuit's "seriousness" requirement. The uncounted offenses included a December 1988 incident in which Carreon-Ortega and two accomplices confronted the female victim on the street, stole her purse, and drove off; a December 1988 incident in which Carreon-Ortega threw a hard object through a window of the same woman's trailer, while yelling "I'm going to get you"; and a March 1989 incident in which Carreon-Ortega and one accomplice again accosted the same victim on the street and again stole her purse. R. Supp. Vol. 1, at 8-9. These incidents are different from, and more serious than, marijuana possession or tribal convictions for misdemeanor assault and battery, and at least as serious as other offenses deemed "serious" by the Ninth Circuit, such as immigration violations, and prison fights and transportation fare evasion. See Connelly , 156

F.3d at 984. These incidents are also much more serious than the conduct at issue in United States v. Wyne, 41 F.3d 1405 (10th Cir. 1994), an Application Note 8 case in which the defendant's uncounted offense was "assault on a female," but where the relevant state statute defined the offense broadly, to include even instances of yelling at a female, and where there was no evidence in the record setting forth the nature of the defendant's specific criminal conduct. Id. at 1408-09. We are persuaded that a pattern of uncounted criminal conduct which includes two separate instances of purse-snatching and one incident where the defendant threw a hard object into an occupied residence is sufficiently serious to permit a district court to depart upward from the sentencing guidelines' heartland. [3]

Therefore, we hold that the factors relied upon by the district court in making its decision to depart upward are permissible departure factors. Regardless of whether we apply the Ninth Circuit's "seriousness" requirement, it is permissible for the district court to depart upward on the basis of two

---

[3]We express no opinion as to whether the district court's "mention" of the robbery and burglary charges, the unproven 1994 arrest, and the uncharged 1997 assault arrest, were improper. The district court explicitly stated that it did not consider the 1994 or 1997 incidents in arriving at its decision to depart upward, and we think that, even assuming, without deciding, that the district court's mention of the 1988 robbery and burglary charges was improper, the district court's decision was still grounded in a permissible factual basis for upward departure. We are persuaded that the uncounted misdemeanor convictions, by themselves, are enough to constitute a valid basis for an upward departure.

uncounted convictions for misdemeanor theft, and one uncounted conviction for misdemeanor harassment.

## II.    Steps Two and Three–The Decision to Depart

We now proceed to the second and third parts of our inquiry:  "whether the combination of factors identified by the district court warrants" an upward departure from the sentencing guidelines, and "whether the record sufficiently supports the factual basis underlying the departure."        Collins , 122 F.3d at 1308. At this stage of the analysis, our review is very deferential.  The Supreme Court has instructed federal appellate courts to take care not to "ignore the district court's special competence . . . about the 'ordinariness' or 'unusualness' of a particular case," and has stated that district courts have an "institutional advantage over appellate courts" in making typicality determinations, because district courts see many more such cases than appellate courts do.        Koon, 518 U.S. at 98-99.  The district court in this case specifically held that Carreon-Ortega's criminal history was "atypical" and that "his criminal history category underrepresents his criminal history."  R. Vol. 7 at 24, 25.  Furthermore, it is undisputed that Carreon-Ortega was convicted of the uncounted offenses, and that these offenses were not assigned any criminal history points at sentencing.  We hold that the district court did not abuse its discretion in determining that this

defendant's particular criminal history was not adequately represented by his criminal history score, and that the factual basis underlying the upward departure is sufficiently supported in the record.

## III.   Step Four–The Degree of Departure

The district court only departed one criminal history category upward. Carreon-Ortega makes no separate argument that the degree of the district court's upward departure was unreasonable.  Thus, we conclude that the degree of the district court's upward departure was reasonable.

Accordingly, the decision of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge